```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
──────────────────────────────────────

| | |
|---|---|
| **WORLDVIEW ENTERTAINMENT HOLDINGS INC. et al.,** | 19cv6519 (JGK) |
| Plaintiffs, | <u>OPINION AND ORDER</u> |
| - against - | |
| **CHRISTOPHER WOODROW et al.,** | |
| Defendants. | |

──────────────────────────────────────

**JOHN G. KOELTL**, District Judge:

After he filed a Chapter 7 petition in the United States Bankruptcy Court for the Central District of California on March 14, 2019, Christopher Woodrow (the "debtor") removed this action from the New York State Supreme Court, New York County. The debtor is a defendant and counterclaim plaintiff in this action, which was originally commenced in state court on October 10, 2014, Index No. 159948/2014. The plaintiffs, Worldview Entertainment Holdings Inc., Worldview Entertainment Holdings LLC, and Roseland Ventures LLC timely moved in this court to remand the case to state court. The debtor opposed the motion to remand and cross-moved to transfer the case to the bankruptcy proceeding currently pending in the Central District of California. For the reasons that follow, the plaintiffs' motion

1

to remand is granted and the debtor's motion to transfer is denied as moot.

I.

The following facts are taken from the state court pleadings and opinions filed in this case as exhibits.

Christopher Woodrow was, until June 2, 2014, the President and CEO of Worldview Entertainment Holdings Inc. ("Worldview Inc."), an independent film company that has produced several high-profile films. Dkt. No. 1-2, at 4 (State Complaint), 106 (Amended Answer).[1] Worldview Inc.'s sole shareholder is Worldview Entertainment Holdings LLC, an LLC formed by Roseland Ventures LLC and Prospect Point Capital LLC. Id. at 5-7. Roseland Ventures LLC and Prospect Point Capital LLC were themselves formed by the debtor and Maria Cestone. Id. In the state court action, the plaintiffs alleged that the debtor embezzled company funds through various means, including unauthorized compensation and forgivable loans paid out by Worldview Inc. Id. at 7-13. Additionally, the plaintiffs alleged that the debtor mismanaged Worldview Inc. by entering into contracts that were unfavorable to Worldview Inc. and against industry standards, including an Agreement and General Release entered into with Hoyt David

---

[1] The page numbers correspond to pages in the exhibits filed in this case, not to the pages of the underlying state court documents.

2

Morgan. Id. at 13-14.[2] Shortly after firing the debtor for cause on June 2, 2014, Worldview Inc. and related entities brought suit in the New York State Supreme Court, New York County, against the debtor, his wife, and his mother's estate for breach of fiduciary duties as well as various other contract and tort claims. Id. at 14-27.[3]

On November 6, 2014 the debtor answered by denying the substantive allegations and counterclaiming for defamation, unpaid wages, and related torts. Id. at 82-89 (Answer). On December 4, 2015, the debtor amended his counterclaim pleadings and added third-party claims against Cestone and Molly Conners, the chief operating officer of Worldview until June 2, 2014, for contract, tort, and corporate state law claims. Id. at 118-34. On December 12, 2017, the plaintiffs filed an amended complaint against the debtor, the debtor's wife, and the mother's estate, as well as Goetz Fitzpatrick LLP and Aaron Boyajian, Worldview

---

[2] The allegations about the debtor's actions with respect to the Morgan agreement form the basis of some of the claims in the later-filed related case, No. 19-cv-6520 (JGK).

[3] On March 30, 2016, the state court action was joined with Johnson v. Cestone, Index No. 152444/2015; Morgan v. Worldview Entertainment Holdings Inc., Index No. 652323/2014; and Shanahan Capital Ventures LLC v. Cestone, et al., Index No. 652034/2015, for purposes of joint discovery. Block Decl., Ex. 1, at 5-6. Morgan v. Worldview Entertainment Holdings Inc. was also removed by the debtor to this Court and is the later filed related case to this case, No. 19-cv-6520 (JGK).

3

Inc.'s lawyers, adding a number of fraud and fiduciary duty-based claims. Id. at 203-21.[4]

On March 14, 2019, the debtor filed a Chapter 7 petition in the Bankruptcy Court for the Central District of California, which automatically stayed the state court proceedings as to the debtor. The plaintiffs filed an adversary proceeding complaint for the non-dischargeability of debt in the bankruptcy action on June 14, 2019, which, among other things, restated the claims brought against the debtor in this action. Block Decl., Ex. G. On July 13, 2019, the debtor removed the entire state court action to this Court pursuant to 28 U.S.C. §§ 1334 and 1452(a). On July 16, 2019, the Appellate Division of the First Department denied without prejudice various appeals and orders from the Supreme Court, New York County in light of the automatic stay that the bankruptcy court issued in the debtor's Chapter 7 proceeding. Block Decl., Ex. I. Then, on August 13, 2019, the plaintiffs timely moved to remand this entire action to state court. The debtor opposed the remand and cross-moved to transfer the entire action to the Bankruptcy Court for the Central District of California.

---

[4] On December 26, 2018, the state court dismissed many, but not all of the claims against the law firm defendants related to their representation of Worldview. Block Decl., Ex. C. On April 2, 2019, the plaintiffs filed a notice of appeal in state court, which is still pending. Block Decl., Ex. D.

4

## II.

As an initial matter, this Court must address the effects of the automatic stay issued from the bankruptcy court on both the debtor's removal of this action from the state court and this Court's power to consider the pending motions.

It is undisputed that the State Court action was stayed upon the filing of the Debtor's bankruptcy petition as to any claims asserted against the Debtor. See 11 U.S.C. § 362(a)(1). It is also true that there is "authority to support the . . . position that the automatic stay applies to removal of the State Court Action to bankruptcy court." In re Cashco, Inc., 599 B.R. 138, 144 & n.6 (Bankr. D. N.M. 2019) (collecting cases).

However, more persuasive is the view that an automatic stay pursuant to Section 362 does not prevent a party from removing a case to federal court or a federal court from adjudicating a motion to remand. The stay provision covers only "the commencement or continuation, including the issuance or employment of process" of any judicial proceedings. 11 U.S.C. § 362(a)(1). But "the filing of a notice of removal does nothing to advance the pending state court action litigation." Cashco, 599 B.R. at 147. The removal of an action from state court is not, by itself "the commencement or continuation" of a judicial proceeding because it does not advance the litigation at all but

5

rather constitutes a change of venue to what the removing party believes is the proper forum, and thereby does not run the risk of "wasteful, duplicative, individual actions by creditors seeking individual recoveries from the debtor's estate[.]" In re Tribune Co. Fraudulent Conveyance Litigation, 818 F.3d 98, 108 (2d Cir. 2016); see also Cashco, 599 B.R. at 147-48. Therefore, removal of an action from state court does not, in and of itself, qualify as the "commencement or continuation" of a judicial proceeding, and is not subject to the automatic stay.

For similar reasons, any actions by this Court to exercise its power of remand or abstention do not fall within the scope of the stay because those actions do not constitute a "continuation" of the action but would simply "restore[] the action to the status quo as it existed upon commencement of the bankruptcy case prior to removal." Cashco, 599 B.R. at 147.

Therefore, the automatic stay does not prevent this Court from addressing the motion to remand and the cross-motion to transfer this action because they do not relate to the "commencement of continuation" of a judicial proceeding.

## III.

When presented with competing motions to remand and transfer, "[t]he Court first addresses the remand motion, and then analyzes the transfer motion." See Delaware Trust Co. v. Wilmington Trust, N.A., 534 B.R. 500, 510 (S.D.N.Y. 2015).

The initial issue is whether and over which claims this Court has subject-matter jurisdiction. The jurisdiction of federal courts over actions removed under the bankruptcy laws is governed by 28 U.S.C. §§ 1452 and 1334. Under 28 U.S.C. § 1452, "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Under 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Thus, pursuant to Section 1334(b), the bankruptcy jurisdiction of federal courts is divided into three categories: "those that arise under title 11; those that arise in a Title 11 case; and those that are related to a case under title 11." Stern v. Marshall, 564 U.S. 462, 473 (2011) (quotation marks and alterations omitted).

"Arising under" jurisdiction exists when the cause of action is created by Title 11 of the Bankruptcy Code itself. See Delaware Trust Co., 534 B.R. at 511. "Arising in" jurisdiction exists when the cause of action does not arise under Title 11 directly, but the action "would have no existence outside of the bankruptcy." Baker v. Simpson, 613 F.3d 346, 351 (2d Cir. 2010) (per curiam) (internal citation marks and citation omitted).

7

"Arising in" jurisdiction covers causes of action that are "an essential part of administering the estate," such as a legal malpractice claim in connection with representation in a bankruptcy proceeding. Id. a 350-51. "Related to" jurisdiction exists when the outcome of the cause of action "might have any conceivable effect on the bankrupt estate." SPV Osus Ltd. V. UBS AG, 882 F.3d 333, 339-40 (2d Cir. 2018) (quoting Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir. 2011)). "While related to jurisdiction is not limitless, it is fairly capacious, and includes suits between third parties which have an effect on the bankruptcy estate." SPV Osus, 882 F.3d at 340; see Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.").

Applying the "conceivable effects" test, courts within the Second Circuit have found that "related to" jurisdiction exists in several circumstances.[5] First, "related to" jurisdiction has been found in cases in which the cause of action will directly

---

[5] There is no dispute that the only basis for subject-matter jurisdiction in this case, if it exists at all, would be "related to" jurisdiction. The state law claims in this case are not brought under a provision of Title 11, and therefore the claims plainly do not "arise under" Title 11. See Delaware Trust, 534 B.R. at 511. Moreover, the state law claims exist independent of the bankruptcy proceeding, and therefore do not "arise in" Title 11. See id. ("A claim arises in a bankruptcy proceeding if it would have no practical existence but for the bankruptcy.") (citation and quotation marks omitted).

8

impact the amount of any distribution payable to creditors, as for example when the bankruptcy trustee or representative sues to recover damages on behalf of the bankruptcy estate. See Parmalat, 639 F.3d at 579 ("If either Bondi or PCFL is successful in their [state law] claims against Grant Thornton, the funds they recover will benefit the respective bankruptcy estates."). Second, "related to" jurisdiction has been found in cases in which the court "enjoin[s] third-party non-debtor claims that directly affect the res of the bankruptcy estate," which can cover cases where the court enjoins a creditor from suing a third party in order to keep in place the debtor's reorganization plan. In re Ditech Holding Corp., 606 B.R. 544, 626 (Bankr. S.D.N.Y. 2019) (quotation marks and citation omitted); see also In re Metromedia Fiber Network, Inc., 416 F.3d 136, 141 (2d Cir. 2005). Third, jurisdiction has been found in cases in which there is a "reasonable legal basis" for a claim by a third-party defendant against the debtor for indemnification or contribution. See SPV Osus, 882 F.3d at 340; Canosa v. Ziff, No. 18-cv-4115, 2018 WL 3642631, at *4 (S.D.N.Y. Aug. 1, 2018) (finding removal by non-debtor defendants proper because the defendants were indemnified by the debtor).

**IV.**

There are three types of claims in this case. First, there are non-debtor claims maintained by the plaintiffs against the

9

law firm defendants, Sarah Woodrow, and the estate of Constance Woodrow. Second, the plaintiffs have claims against the debtor. Third, the debtor has counterclaims against the plaintiffs.

**A.**

This Court lacks subject-matter jurisdiction over the plaintiffs' non-debtor claims. None of the three bases on which courts within the Second Circuit have found "related to" jurisdiction exist with respect to those claims. The outcome of the non-debtor claims will not directly affect the bankruptcy res, because the debtor is not a party to those claims. See In re Falchi, No. 97 B 43080, 1998 WL 274679, at *7 (Bankr. S.D.N.Y. May 27, 1998) ("Likewise, if Yashiro succeeds against the Non-Debtor defendants on its breach of contract and fraud claims, its recovery will not affect debtor's estate because it will be payable to Yashiro, and Yashiro does not allege or demonstrate otherwise. Non-Debtor Defendants are correct that because Yashiro's claims against them will not impact Falchi's estate, they are not "related to" his chapter 11 case and must be dismissed[.]"). Nor are the non-debtor defendants in this case creditors of the debtor. Finally, there are no allegations that the non-debtor defendants do or would have a reasonable legal claim against the debtor for indemnification or contribution. Because the non-debtor claims will not have any "conceivable effect" on the bankruptcy res, this Court does not

10

have subject-matter jurisdiction over those claims. See SPV Osus, 882 F.3d at 339-40.[6]

**B.**

This Court does have "related to" jurisdiction over the plaintiffs' claims against the debtor and the debtor's counterclaims against the plaintiffs. Claims to which the debtor is a party "relate to" the bankruptcy proceeding because the outcome of the claims will have a direct, and therefore conceivable, effect on the bankruptcy estate. See In re Scott, 572 B.R. 492, 520 (Bankr. S.D.N.Y. 2017) (collecting cases showing that causes of action owned by the debtor become property of the estate); Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, 462 B.R. 457, 463 (S.D.N.Y. 2011) ("The parties agree, and this Court finds, that the captioned proceedings are 'related to' the Coudert bankruptcy estate that they augment for the benefit of all the creditors."). Because the debtor is a party to both the plaintiffs' claims against him and his counterclaims against the plaintiffs, the outcome of

---

[6] The fact that two of the non-debtor defendants are the debtor's spouse and the estate of the debtor's mother does not affect this analysis. Courts have found that they have "related to" jurisdiction over non-debtor spouses when the nature of the suit itself affects the bankruptcy estate. See, e.g., In re Allnutt, 220 B.R. 871, 885 (Bankr. D. Md. 1998) ("Although none of the parties to the suit is a debtor, the plaintiff is an insider who, as the debtor's non-filing spouse, is claiming ownership in the debtor's property as his co-tenant in privity with the debtor."). Absent something inherent in the proceeding or claim involving the non-debtor spouse that brings the proceeding within the ambit of the bankruptcy proceeding, the mere fact that a non-debtor spouse is a party to the proceeding does not give the federal court subject-matter jurisdiction over the proceeding. See In re Rosenzweig, 245 B.R. 836, 842 (Bankr. N.D. Ill. 2000).

that litigation will affect the size of the bankruptcy estate, and "related to" subject-matter jurisdiction therefore exists. See In re New York Skyline, Inc., 471 B.R. 69, 78 (Bankr. S.D.N.Y. 2012) ("[T]he claims and counterclaims asserted, at a minimum, 'related to' or were non-core claims in Skyline's bankruptcy case. Skyline was a party to each of the claims and counterclaims, and their resolution would have a conceivable effect on Skyline's estate.").

**V.**

"Related to" claims are non-core, which means that even though the federal court has subject-matter jurisdiction over the claims, the federal court nevertheless may be required to abstain from hearing them in favor of the state court. See Baker, 613 F.3d at 350. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

This provision requires a district court to abstain from hearing a case if

> (1) the motion was timely brought; (2) the proceeding in federal court is based upon a state law claim; (3) the proceeding is "related to" a bankruptcy

12

> proceeding, but does not arise under title 11 or arise in a title 11 case; (4) section 1334 is the sole basis for federal jurisdiction; (5) 'an action is commenced' in state court; and (6) the action can be 'timely adjudicated' in state court.

Little Rest Twelve, Inc. v. Visan, 458 B.R. 44, 54 (S.D.N.Y. 2011) (citation omitted). In this case there is no dispute that the first, second, fourth, and fifth prongs are met.[7] Further, as explained above, the third prong is met because the claims at issue are "related to" a bankruptcy proceeding, but do not arise under or in a title 11 case. That only leaves the sixth prong.

"Whether an action can be timely adjudicated in state court is a mixed question of law and fact." Parmalat, 639 F.3d at 580. The Second Circuit Court of Appeals has stated that four factors are relevant in evaluating timeliness under Section 1334(c)(2): "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues

---

[7] At oral argument, counsel for the debtor suggested that the fourth prong may not apply because this case might have been commenced under this Court's diversity jurisdiction by virtue of the fact that the debtor is no longer a citizen of New York, but instead became a citizen of California several years ago. However, the plaintiff in this case, Worldview Entertainment Holdings LLC is an LLC whose citizenship is determined by the citizenship of its members, and the defendant Goetz Fitzpatrick is an LLP whose citizenship is likewise determined by the citizenship of its members. See ICON MW, LLC v. Hofmeister, 950 F. Supp. 2d 544, 546 (S.D.N.Y. 2013). Because Molly Conners is a member of Worldview Entertainment Holdings LLC and is a citizen of New York, and one of Goetz's partners, John B. Simoni, is a citizen of New York, complete diversity does not exist in this case. See Dkt. No. 21; 28 U.S.C. § 1332(a)(1). In any event, the debtor removed this action roughly five years after the commencement of this action in state court, citing only 28 U.S.C. § 1334 as a basis for this Court's jurisdiction, and that removal would have violated 28 U.S.C. § 1446(c), which bars removal of diversity cases more than one year after commencement of the action. See Bowles v. Massey Energy Co., No. 12-cv-5997, 2012 WL 6628953, at *9 (S.D. W. Va. Dec. 19, 2012). Therefore, 28 U.S.C. § 1334 is the sole basis for jurisdiction in this Court.

13

presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration of the estate." Id.

The first factor is not dispositive one way or another in this case because neither party has provided the Court with any information or statistics relating to relative backlog in the New York State Supreme Court, New York County, the Southern District of New York, or the Central District of California. Cf. In re AOG Entertainment, Inc., 569 B.R. 563, 582 (Bankr. S.D.N.Y. 2017) ("As a result, caseload comparisons and dispositions are not particularly meaningful, and the statistical comparisons do not persuasively show one way or the other which court has a greater backlog."). If anything, this factor cuts in favor of abstention because the state court proceeding has been ongoing for five years. See Little Rest Twelve, 458 B.R. at 59 ("While the parties have not presented any general statistics as to the backlog of the respective state and federal court calendars, it is evident that the cases are far along in state court[.]").

The second factor cuts in favor of abstention because the claims at issue are equitable and contract claims based on New York state law over which federal judges have no special expertise. See id.; Allstate Ins. Co. v. Ace Securities Corp.,

No. 11-cv-1914, 2011 WL 3628852, at *10 (S.D.N.Y. Aug. 17, 2011) ("While federal courts naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims."). In a case like this one that will turn on the meaning of the contracts and course of dealing between the parties and on questions of fiduciary duties under New York law, it cannot be said that either this Court or the Bankruptcy Court for the Central District of California are in a better position to hear the action than the New York State Supreme Court. See N.Y. Commercial Bank v. Pullo, No. 12-02052, 2013 WL 494050, at *7 (Bankr. S.D.N.Y. Feb. 7, 2013).

The third factor cuts in favor of abstention because the bankruptcy proceedings began relatively recently in comparison to the state court proceedings. See Little Rest Twelve, 458 B.R. at 59. Further, the adversary proceedings in the bankruptcy court are substantially similar to the state proceedings at issue in this case. Because the bankruptcy court will have the option, after this Court abstains, either to lift the stay with respect to the state court proceedings, or hear those substantially similar proceedings in its own court as adversary proceedings, the third factor also favors abstention.

The fourth factor also favors remand. It is undisputed that the proceedings in the state court will remain subject to the automatic stay unless and until it is lifted by the bankruptcy

15

court. Thus, there is little chance that the bankruptcy proceedings will be affected or delayed by the state court proceeding. Further, when deciding whether a matter may be timely adjudicated, "perhaps the single most important factor is the nature of the underlying chapter proceeding. In a chapter 7 proceeding, there is no administrative urgency or plan of reorganization to facilitate and timely adjudication can be weighed relatively lightly." In re Leco Enters., Inc., 144 B.R. 244, 251 (S.D.N.Y. 1992) (internal citations, quotation marks, and alterations omitted). In this case, in which a chapter 7 proceeding has recently begun and the automatic stay will remain in effect as to this proceeding on remand, there is little chance that the state court proceeding would prolong the administration or liquidation of the estate.

For similar reasons that mandatory abstention is warranted in this case, permissive abstention and equitable remand are also warranted. A court may permissibly abstain from hearing particular claims over which it has jurisdiction under 28 U.S.C. § 1334(c)(1) "in the interest of justice, or in the interest of comity with State courts or respect for State law," or equitably remand particular claims "on any equitable ground" under 28 U.S.C. § 1452. "The two inquiries are essentially the same and are often analyzed together." Little Rest Twelve, 458 B.R. at 60.

When deciding whether permissive abstention and equitable remand is appropriate, courts typically consider some or all of the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

In re Cody, Inc., 281 B.R. 182, 190 (S.D.N.Y. 2002) (citation omitted). In this case, remand of the New York state law claims is warranted because they concern solely state law matters, as opposed to bankruptcy or other federal matters. Further, the claims are subject to an automatic stay. Thus, the bankruptcy court will be able to determine how the state law claims will proceed following remand. Remand of the state law claims serves the dual purposes of respecting both the New York State court and the bankruptcy proceedings currently ongoing in the Central District of California, particularly because the state law

claims over which this Court has jurisdiction are only some claims among many state law claims in the complex, multi-party state court litigation below. On balance, the factors favor equitable remand and permissive abstention. See Fried v. Lehman Bros. Real Estate Assocs. III, L.P., 496 B.R. 706, 713 (S.D.N.Y. 2013) ("The factors largely ask the Court to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts.").

Because abstention and remand are warranted, the motion to transfer venue is denied as moot.

## CONCLUSION

The motion to remand is **granted**. The cross-motion to transfer venue is **denied as moot**. The Clerk is directed to remand this case to the New York State Supreme Court, New York County. The Clerk is directed to close this case and all pending motions.

**SO ORDERED.**

**Dated:    New York, New York**
        **December 23, 2019**    _____/s/ John G. Koeltl_____
                                          **John G. Koeltl**
                                **United States District Judge**